UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD RICHARD and
SANDRA RICHARD,

        Plaintiffs,

vs.

OAK TREE GROUP, INC.,

        Defendant.
                                         /

Case No. 1:06-cv-362

Hon. Hugh W. Brenneman, Jr.

**OPINION**

This matter is now before the court on defendant's motion for summary judgment (docket no. 57) and plaintiffs' motion for partial summary judgment (docket no. 59).

**I.    Background**

Plaintiffs set forth the following allegations in their amended complaint. Defendant mailed them a collection letter, dated December 14, 2005, demanding payment of a debt owed to American Campgrounds, Inc. ("ACI") in the amount of $6,506.58. Amend. Compl. at ¶ 8. The debt was incurred for membership in a campground to be used for family vacations. *Id.* at ¶ 9. Although the letter stated a balance due of $6,506.58, plaintiffs only owed ACI $4,842.78, with additional interest due of $307.82. *Id.* at ¶¶ 8, 11. Defendant "falsely inflated the balance by $1,355.98" to include "collection fees," and failed to inform plaintiffs, "either before or at the time the collection letter was sent, that the amount defendant claimed was due to the creditor included [sic] an additional collection fee." *Id.* at ¶¶ 12, 13. Defendant's "collection fees" were calculated as a percentage of the amount claimed to be owed and not reasonable. *Id.* at ¶¶ 14, 15. Plaintiffs allege that defendant's actions violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§

1692e, 1692e(2)(A), 1692e(2)(B), 1692f(1) and 1692g(a)(1), and seek damages as allowed under § 1692k(a)(1), (2) and (3). In addition, plaintiffs allege that defendant violated the Michigan Occupational Code ("MOC"), M.C.L. §§ 339.915(a), 339.915(e), and 339.915(f), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

### II.     Standard of review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.    Discussion

#### A.     The ACI agreement and the collection letter

On January 18, 2005, plaintiffs executed an "Unlimited Gold Card Membership Agreement" (the "membership agreement") with ACI, which included a membership fee of $4,995.00 and "dues" of $45.00, for a total price of $5,040.00. *See* membership agreement attached

to defendant's brief as Exh. A.[1]  Under the agreement, plaintiffs made a downpayment of $440.00, and agreed to pay the balance of $4,600.0 in 60 monthly payments of $88.94 commencing on April 15, 2005.  *Id.*

The membership agreement addressed a member's default and ACI's remedies upon default, stating in pertinent part as follows:

> 15. <u>Default.</u>  Time is of the essence for making all payments required by Member pursuant to the terms of this Membership Agreement.  Each of the following events shall constitute an "event or [sic] default" by Member hereunder: a) Member's failure to make any payment under this Membership Agreement when due, including but not limited to the payment of the Membership Fee and Maintenance Fees . . .
>
> 16. <u>Remedies.</u> Should any "event of default" by Member occur hereunder, ACI may immediately suspend Member's rights to use ACI facilities until the default is remedied.  In addition, upon the occurrence of any "event of default" ACI may, upon 30 days' written notice to Member, a) declare the entire unpaid balance of the Membership Fee, together with the finance charge and Maintenance Fees accrued to the date of the default, immediately due and payable, with interest on the unpaid principal balance accruing from the date ACI declares the balance due at the maximum contract rate allowed by law, until fully paid; or b) terminate its obligations under this Membership Agreement and the membership.  If ACI terminates its obligations under this Membership Agreement and the membership because of Member's default, which ACI may but is not required to do, ACI shall have all remedies provided by law, and ACI shall keep all monies Member has paid ACI up to the time of default as liquidated damages and not as a penalty.  Member agrees that this action as to liquidated damages is a reasonable endeavor to estimate compensation to ACI for the losses which might result from Member's default.  Member may not terminate its obligations under this Membership Agreement or the membership if Member defaults.  *Member agrees to pay ACI for ACI's collection costs and expenses incurred due to any default to Member*.

---

[1] The exhibit attached to the amended complaint is partially illegible.  Defendant later provided the court with a copy of the signed agreement for review.

Membership Agreement at ¶¶ 15-16 (emphasis added).  It is undisputed that plaintiffs failed to make the monthly payments as required under the membership agreement.  *See* Loan Payment History attached to defendant's brief as Exh. B.   This suit arises from defendant's collection letter sent to plaintiffs for the unpaid amounts owed to ACI.  *See* Exh. 1 attached to Amended Compl.

The collection letter was sent pursuant to an "Agreement and Assignment of Accounts" dated September 24, 2003, in which "American Campgrounds" agreed to assign certain accounts to  defendant.  *See* Agreement and assignment of accounts (the "collection agreement") attached to defendant's brief as Exh. C.  The collection agreement provides that certain accounts will be assigned to defendant for collection:

> 2.4 AUTHORITY TO COLLECT.  Upon assignment of any claim and / account, not withstanding anything contained herein, AGENCY [defendant] shall review with CLIENT [ACI] any requests to compromise a claim and the decision to accept any such compromise shall be made by CLIENT, in its sole and absolute judgement.  AGENCY shall have full authority to perform all acts deemed legal and necessary to collect said claim and / or accounts.
>
> 2.5 DILIGENT COLLECTION BY AGENCY: Upon assignment of any claim and / or account, AGENCY shall comply with all applicable laws and regulations in performing its duties hereunder and shall obtain all applicable licenses or approvals necessary or required in order to perform its duties hereunder. AGENCY shall promptly undertake to, through any act which is proper and lawful, collect any amounts due and owing on account of the assigned claims and / or accounts.
>
> 2.6 EXCLUSIVE RIGHT: By assignment of any claim and / or account, CLIENT grants to AGENCY the exclusive right to collect said claim and / or account.

Collection agreement at §§ 2.4-2.6.

The collection agreement also provides that defendant will be compensated on a commission basis and reimbursed for attorneys fees and court costs necessary for filing a legal action:

    2.8    LEGAL ACTION: AGENCY shall not file any legal action on any assigned claim and / or account without first obtaining written consent from CLIENT. AGENCY will advance any and all attorney fees and / or court costs necessary to file legal action. AGENCY'S advanced attorneys fees and or [sic] court costs will be added to the assigned claim and / or account and any monies collected will first be applied to AGENCY'S advanced fees. The commission structure will remain as mentioned below.

    2.9    COMMISSION: AGENCY shall receive a commission on all monies or its equivalent paid on account of the assigned claims and/or accounts which are paid to AGENCY, AGENCY'S agents or CLIENT in accordance with the following commission schedule: 28% of the total amount collected by AGENCY. 30 % is for all placements whether they are 1st or 2nd placements. AGENCY agrees to add collection fees to the assigned balance of each account if allowed by law.

    2.10    DIRECT PAYMENTS: On any payments made directly to CLIENT on account of the assigned claims and / or accounts, AGENCY is authorized to deduct its commission thereon from any monies due CLIENT from the collections received by AGENCY.

    *    *    *

    2.13    STATEMENT OF ACCOUNT AND REMITTANCE OF MONIES DUE: On or before the 15th day of every month, AGENCY shall provide a written statement of accounts setting forth all credits and deductions made up to and including the last day of the processing month / cycle, except that the statement need not account for; (a) court costs that were previously advanced by AGENCY; and (b) attorneys fees and interest or other charges incidental to the principal of the claim properly and legally belonging to AGENCY. At the same time, AGENCY shall remit all monies due to CLIENT on account of the assigned claims and / or accounts.

Collection agreement at §§ 2.8-2.10, 2.13.

        Plaintiffs do not dispute that their ACI account was assigned to defendant for collection under the collection agreement. Defendant's collection letter, dated December 14, 2005, appeared on the letterhead of "Oak Tree Group, Inc." located in Tehachapi, California. *Id.* The letter prominently displayed the words "**COLLECTION NOTICE**" and the phrase "**THIS HAS**

5

**BEEN SENT TO YOU BY A COLLECTION AGENCY**." *Id.* The letter identified a "Balance Due" of $6,506.58 on account no. 28236, stating in pertinent part that:

> This letter is an opportunity to resolve your delinquency with **AMERICAN CAMPGROUNDS, INC.**
>
> If you do not respond with full payment or by notifying us at the address above, we intend to <u>Implement Full Collection Procedures</u>. Protect your credit standing and avoid further collection action by responding to this collection notice. To make payment, send your check for the full amount made payable to Oak Tree Group, Inc.

*Id.*

On or about December 28, 2005, plaintiffs sent defendant a "letter of dispute" in response to the collection notice, observing that the balance due in the notice is "considerably higher" than the purchase price in the original agreement with ACI and requesting "an itemized list of how you established the balance due of $ 6,506.58." *See* plaintiffs' letter attached to defendant's brief as Exh. E. Plaintiffs claimed that ACI misrepresented the nature of the membership (i.e., that they could not utilize it in Alabama), that they contacted an ACI customer service representative in Arizona, that they sent ACI a certified letter on May 31, 2005 per the customer service representative's instructions requesting termination of the membership, and that they received no response from ACI. *Id.* Plaintiffs also requested that defendant release them from the agreement. *Id.*

In a letter dated January 5, 2005 [sic], an unidentified representative from Oak Tree Group, Inc., provided the following response:

> Your letter dated 12-28-05 has been received in our office and we would like to resolve this matter in an amicable fashion. According to your contract, you are allowed to use resorts affiliated with Coast-to-Coast, Adventure Outdoor Resorts and Resort Parks International. There are several campgrounds in every state that can be used with this membership, provided they are affiliated with the resort. American

6

>   Campgrounds, Inc. is among one of thousands of resorts throughout the U.S. that sell memberships the same way, there are many happy campers to say the least [sic].
>
>   The person you contacted in Arizona named Larry is a person that works out of the billing department for American Campgrounds, Inc. and has no authority whatsoever. This matter needs to be resolved through this office.
>
>   The balance of $6,506.58 placed for collection can be broken down as follows: $ 4,842.78 in principle [sic], $307.82 interest and $ 1,355.98 in collection fees.
>
>   The contract you signed is going on 10 months in arrears and you are jeopardizing your good credit rating. Please call me directly and I may be able to work out a reinstatement agreement or a release from the entire contract.
>
>   Please contact my office at (800) 742-5501, extension 224.

*See* defendant's letter attached to defendant's brief as Exh. G (emphasis in original). Then, in a statement dated March 27, 2006, "American Campgrounds" advised plaintiffs that their account had an amount due of $1,120.58, and advised them to make a check payable to "American Campgrounds - MI." *See* statement attached to defendant's brief as Exh F.[2]

### B.     Federal claims

"Congress enacted the FDCPA in 1977 'to eliminate abusive debt collection practices by debt collectors' and to insure that debt collectors who refrain from abusive practices are not competitively disadvantaged." *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 741 (N.D. Ill. 2003); 15 U.S.C. § 1692(e). The Sixth Circuit has adopted the "least sophisticated consumer" test

---

[2] While plaintiffs' suit is not based on defendant's response, the court finds the response confusing, if not misleading. First, while plaintiffs' membership agreement refers to a reciprocal arrangement with "Coast to Coast," there is no reference to "Adventure Outdoor Resorts" or "Resort Parks International." Second, it would have been reasonable for plaintiffs to discuss their ACI bill with ACI's customer service representative in May 2005 and follow his instructions, notwithstanding ACI's subsequent disavowal of the representative's authority. Third, while the January 2006 letter invites plaintiffs to "call me directly," it does not identify the letter's author or the name of a contact person. Fourth, "American Campgrounds" March 2006 invoice is inconsistent with the balance due as shown on the collection notice, and indicates that American Campgrounds, rather than defendant, is in charge of resolving plaintiffs' account.

in determining whether a debt collector made a misrepresentation to a consumer in violation of the FDCPA. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992). The "least sophisticated consumer" test is an objective analysis that seeks to protect the interests of both naive consumers and debt collectors. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F. 3d 360, 363 (2nd Cir. 2005). While the least sophisticated debtor standard is objective, it is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Consumer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999), *quoting Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir.1988).

### 1. 15 U.S.C. § 1692g(a)(1)

Plaintiffs seek relief under 15 U.S.C. § 1692g(a)(1), which sets forth the requirement that a debt collector provide adequate notice of the debt:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt[.]

Although the December 14, 2005 letter included ACI's collection costs as part of the $6,506.58 balance due, the court concludes that this letter did not violate § 1692g(a)(1). Plaintiffs' failure to make timely monthly payments on the Membership Fee constituted an "event of default" under the Membership Agreement. *See* Membership Agreement at ¶¶ 15-16. Plaintiffs' default made them liable "for ACI's collection costs." *Id.* at ¶ 16. . Because plaintiffs agreed to pay ACI's collection costs, defendant's collection letter could properly include those costs within "the amount

of debt" owed. The court addressed a factually similar issue in *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), concluding when the creditor and debtor's contract allows the creditor to seek collection fees and costs, the inclusion of those fees and costs does not violate § 1692g(a), even if the parties' contract did not state a specific amount of fees and costs. Although *Fields* involved the collection efforts of an attorney and a related attorney fee provision, the court's reasoning applies with equal vigor to the "collection fee" charged by defendant:

> [W]hen a debtor has contractually agreed to pay attorneys fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA. Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of the debt.

*Fields*, 383 F.3d at 565. Accordingly, defendant is entitled to summary judgment on plaintiffs' claim brought pursuant to § 1692g(a).

### 2. 15 U.S.C. § 1692e

Next, plaintiffs allege that the December 14, 2005 letter violated 15 U.S.C. § 1692e, specifically 1692e(2)(A) and (B), which prohibit debt collectors from making misrepresentations in connection with collecting a debt, providing in pertinent part as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . .
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt; or
>
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

9

As a general rule, "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 512 (6th Cir. 2007), *quoting Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996). Once again, the court finds the Seventh Circuit's reasoning in *Fields* persuasive. In *Fields* the defendant's letter to the plaintiff showed an account balance that exceeded the plaintiff's principal obligation, due to the additional attorney fees. *Fields*, 383 F.3d at 566. However, the defendant's letter did not explain that the attorney fees were included in the account balance. *Id.* The court determined that an unsophisticated consumer could be confused by this tactic, reasoning that "[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." *Id.* The court advised that a defendant debt collector could avoid such a violation of § 1692e by itemizing the different charges that comprise the total amount of the debt. *Id.  See, generally, Singer v. Pierce & Associates, P.C.*, 383 F.3d 596, 598 (7th Cir. 2004) (no violation of § 1692e where the attorney fees were listed separately in a loan payoff letter); *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F.Supp.2d 599, 607-608 (E.D. Pa. 2006) (debt collector's reference to attorney fees and costs of collection as "recoverable corporate advances" may be confusing and deceptive to an unsophisticated consumer); *Dowdy v. Solutia Healthcare TAS, Inc.*, No. 1:05-0090, 2006 WL 3545047 at *7-9 (M.D. Tenn. Dec. 8, 2006) (citing *Fields* and concluding that defendant's collection letter violated § 1692e when it failed to clearly reflect the addition of the collection costs to the "principal balance" owed).

Here, defendant's December 14, 2005 letter states that plaintiffs owed AGI a "balance due" $6,506.58. Plaintiffs' surprise at this balance due is understandable. The total

amount of the Membership Fee and Dues was $5,040.00. Plaintiffs made a downpayment of $440.00, leaving a balance due of $4,600.00, an amount nearly $2,000.00 less than defendant's statement of the balance due in the collection letter. Defendant provided no explanation for this dramatic increase in plaintiffs' balance. Defendant's failure to account for this additional amount would mislead an unsophisticated consumer. Even a sophisticated consumer would find it difficult to verify or dispute this debt, which included both interest and collection costs. Accordingly, the court concludes that the December 14, 2005 collection notice violated § 1692e(2).

### 3.   15 U.S.C. § 1692f

Next, plaintiffs allege that the December 14, 2005 collection notice violated 15 U.S.C. 1692f(1), which prohibits debt collectors from using unfair means to collect a debt, providing in pertinent part as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

In support of their position, plaintiffs cite *Kojetin v. CU Recovery*, 212 F.3d 1318 (8th Cir. 2000), in which the Eighth Circuit found that the defendant's notice violated the FDCPA by adding the collection fee based on a percentage rather than on actual costs, when the agreement provided that she was liable only for "actual costs." *Kojetin*, 212 F.3d at 1318.[3] The Eighth Circuit agreed with the district court that the defendant violated the FDCPA when it charged the plaintiff

---

[3] In *Kojetin*, the plaintiff agreed "to pay reasonable attorney's fees and costs incident to collection of due and unpaid installments," *Kojetin v. CU Recovery, Inc.*, No. 97-2273, 1999 WL 1847329 at *1 fn. 1 (D. Minn. March 29, 1999), which the appellate court construed as "actual costs."

"a collection fee based on a percentage of the principal balance that remained due rather than the actual cost of the collection." *Id.*

Similarly, the court concludes that the December 14, 2005 collection notice in this instance violated § 1692f(1). Plaintiffs agreed "to pay ACI for ACI's collection costs and expenses incurred" due to their default. Member Agreement at ¶ 16. This agreement limited plaintiffs' liability to ACI's collection costs "incurred," i.e., their "actual" collection costs. The fact that defendant added its maximum possible commission to the account balance does not establish that ACI incurred this amount as a collection cost. On the contrary, ACI would not incur any collection costs until defendant successfully collected some of the debt from plaintiffs. Requiring plaintiffs to pay collection costs consisting of 28% of the outstanding principal balance amounts to charging plaintiffs liquidated damages, something to which she did not agree. *See Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, No. 1:04-cv-733, 2005 WL 2180481 at *4 (W.D. Mich. Sept. 9, 2005) (where a plaintiff agreed to pay a "reasonable attorney fee" related to the collection of credit card debt, and the collecting attorneys added a 25% attorney fee to the account balance upon collection, the court determined that "[i]t would take a leap of logic" to find that the plaintiff agreed to a liquidated amount of 25% of the principal debt as attorney fees in the event she defaulted). *Cf. Kojetin*, 1999 WL 1847329 at *2 n. 3 ("[t]he FDCPA would provide little protection to a debtor . . . if, in agreeing to pay 'reasonable collection costs,' a debtor was held to have agreed to pay whatever percentage fee a debt collection service happened to charge a lender").

To the extent defendant's agreement with ACI allowed it to add a commission to the account balance, it is, of course, the language of ACI's membership agreement with plaintiffs that controls in resolving the issue before the court.

In summary, plaintiffs agreement to pay ACI's "collection costs and expenses incurred," is not an agreement to pay a collection agency's maximum potential commission based upon a percentage of plaintiffs' unpaid account balance with ACI. Accordingly, plaintiffs are entitled to summary judgment with respect to their claim brought pursuant to § 1692f.

### 3.     State claims

Finally, plaintiffs seek relief under the MOC, specifically M.C.L. §§ 339.915(a), (e), and (f), which read as follows:

A licensee shall not commit 1 or more of the following acts:

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or the stationery of a credit bureau unless it is disclosed that it is the collection department of the credit bureau. . . .

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

(f) Misrepresenting in a communication with a debtor any of the following:

    (i) The legal status of a legal action being taken or threatened.

    (ii) The legal rights of the creditor or debtor.

    (iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property.

    (iv) That accounts have been turned over to innocent purchasers for value.

Defendant asserts that there are no Michigan decisions addressing the theories of liability as set forth in plaintiffs' MOC claims. Plaintiffs have not provided the court with any legal authority construing these state law claims, and this court has found none. Because there appears

to be no guidance from the state courts on plaintiffs' claims, defendant contends that the federal court should refrain from exercising supplemental jurisdiction over these claims. The court agrees.

In *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D. Mich. 2001), the court explained that it is sometimes preferable to refrain from exercising supplemental jurisdiction to determine a novel issue of state substantive law:

> The statutory basis for this court's supplemental jurisdiction over state-law claims is established by 28 U.S.C. § 1367. Section 1367(a) states that, "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." In turn, subsection (c)(1) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-(1) the claim raises a novel or complex issue of State law." "[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir.1999). The Sixth Circuit reviews district court decisions whether to exercise supplemental jurisdiction under an abuse of discretion standard. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir.2000); *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir.1998). The district court's discretion is informed by factors of judicial economy, convenience, fairness and comity. 196 F.3d at 620. When facing novel or complex state law, district courts are to be cognizant that there may be "nuances" of state law better left for resolution in the first instance by the state courts. *See Cooper v. Parrish*, 203 F.3d 937, 953 (6th Cir.2000); *see also Drew v. University of Tennessee Regional Medical Center Hosp.*, No. 99-5070, 2000 WL 572064, at *5 (6th Cir. May 1, 2000) (finding that it was "entirely appropriate for the district court to decline to exercise supplemental jurisdiction" over a claim raising a novel question of state law). The "obscurity or paucity of pertinent state judicial precedent [ ] argue[s] in favor of deferring in favor of the state courts." *Scott v. Long Island Sav. Bank, FSB*, 937 F.2d 738, 742 (2d Cir.1991).

*Rockey*, 199 F.R.D. at 596.

In *Rockey*, the court declined to address claims under a number of Michigan statutes, concluding as follows:

> Although plaintiffs have asserted claims under a number of state statutes, there is not a single published state-court opinion on point . . . Each of these claims would require the court to apply a Michigan statute in an unprecedented fashion, with no guidance from any Michigan appellate court. . . . Comity cautions that a federal court should not be the first court to step in and create new state-law liability. Economy, convenience and fairness also weigh against burdening this federal action with an excess overlay of state law. In its discretion, pursuant to 28 U.S.C. § 1367(c)(1), the court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims. Plaintiffs' state-law claims will be dismissed without prejudice.

*Rockey*, 199 F.R.D. at 596 -597. *See also Rugumbwa v. Betten Motor Sales*, 200 F.R.D. 358, 369 (W.D. Mich. 2001) (*quoting Rockey*).

Plaintiffs' state law claims present novel issues of substantive state law. Neither party cites Michigan case law interpreting §§ 339.915(a), (e) and (f) in a similar situation. Comity cautions that this court should not create new state-law liability in this case. These issues should be addressed in the first instance by the Michigan state courts. For these reasons, plaintiffs' state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367.

## II.     Conclusion

Accordingly, defendant's motion for summary judgment (docket no. 57) will be **GRANTED** with respect to plaintiffs' claims under 15 U.S.C. § 1692g(a)(1) and **DENIED** with respect to plaintiff's claims under 15 U.S.C. §§ 1692e and 1692f.

Plaintiffs' partial motion for summary judgment (docket no. 59) will be **GRANTED** with respect to their claims brought under 15 U.S.C. §§ 1692e and 1692f and will be **DENIED** with respect to their claims brought under 15 U.S.C. § 1692g(a)(1).

Plaintiffs' claims brought pursuant to the Michigan Occupational Code, M.C.L. §§ 339.915(a), (e) and (f), will be dismissed without prejudice pursuant to 28 U.S.C. § 1367.

An Order consistent with this opinion shall be issued forthwith.


Dated:  February 12, 2008                         /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge