UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD RICHARD and
SANDRA RICHARD,

        Plaintiffs,

Case No. 1:06-cv-362

v.                                                                                    Hon. Hugh W. Brenneman, Jr.

OAK TREE GROUP INC.,

        Defendant.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

        Plaintiffs brought this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e. 1692e(2)(A), 1692e(2)(B), 1692f(1) and 1692g(a)(1), and sought damages as allowed under § 1692k(a)(1), (2) and (3).  Plaintiffs also sought relief under the Michigan Occupational Code, M.C.L. §§ 339.915(a), 339.915(e) and 339.915(f), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.  In an Opinion and Order entered on February 12, 2008, the court granted plaintiffs' motion for partial summary judgment with respect to the FDCPA claims brought pursuant to §§ 1692e and 1692f, granted defendant's motion for summary judgment with respect to the FDCPA claims brought pursuant to § 1692g(a)(1), and dismissed the state law claims.

        The sole issue remaining before the court is whether plaintiffs are entitled to statutory damages of up to $1,000.00 as allowed by § 1692k.  The parties have submitted this issue to the court on briefs in lieu of a bench trial.

## I. Findings of Fact

### A. Uncontroverted Facts

The parties agreed to the following uncontroverted facts as set forth in the final pre-trial order:[1]

> On January 18, 2005, plaintiffs signed a contract with American Campgrounds, Inc. to purchase an unlimited Gold Card Membership that allowed plaintiffs to use ACI's resort facilities.
>
> The terms disclosed on the contract are as follows: cost of membership: $4,995.00. down payment: $440.00 monthly payments thereafter of $88.94 over a five-year term, remaining principal balance of $4,600.00, along with the six-percent interest, total sale price of $5,731. Plaintiffs made no further payments on the account.
>
> Oak Tree is engaged in the collection of debts from consumers using the mail and/or telephone regularly collects or attempts to collect consumer debts alleged to be due to another. Oak Tree is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).
>
> Oak tree sent a collection letter to plaintiffs dated December 14, 2005, demanding payment of an alleged debt owed to American Campgrounds, Inc. in the amount of $6,506.58.
>
> The alleged debt claimed in defendant's letter of December 14, 2005, was incurred for personal, family of household purposes, i.e., for membership in a campground to be used for family vacations.
>
> The letter listed the balance owed on the debt to American Campgrounds as $6,506.58. This amount actually included the $4,842.78 balance owed to American Campgrounds, an additional $307.82 for interest, and $1,355.98, for collection fees. The collection fees were calculated as a percentage of the amount owed.
>
> Plaintiffs wrote to Oak Tree on December 28, 2005, requesting an itemized list of charges that made up the balance due, which breakdown was provided on January 5, 2006.

Final Pre-Trial Order (docket nos. 85, 87).

---

[1] The court has reproduced the statement as submitted by the parties, without attempting to correct any grammatical or spelling errors.

### B.     Findings as set forth in the court's previous opinion

The court also adopts the recitation of facts set forth in the February 12, 2008 opinion, which read as follows:

> On January 18, 2005, plaintiffs executed an "Unlimited Gold Card Membership Agreement" (the "membership agreement") with ACI, which included a membership fee of $4,995.00 and "dues" of $45.00, for a total price of $5,040.00. *See* membership agreement attached to defendant's brief as Exh. A. Under the agreement, plaintiffs made a downpayment of $440.00, and agreed to pay the balance of $4,600.00 in 60 monthly payments of $88.94 commencing on April 15, 2005. *Id.*
>
> The membership agreement addressed a member's default and ACI's remedies upon default, stating in pertinent part as follows:
>
> 15. <u>Default.</u>  Time is of the essence for making all payments required by Member pursuant to the terms of this Membership Agreement. Each of the following events shall constitute an "event or [sic] default" by Member hereunder: a) Member's failure to make any payment under this Membership Agreement when due, including but not limited to the payment of the Membership Fee and Maintenance Fees . . .
>
> 16. <u>Remedies.</u> Should any "event of default" by Member occur hereunder, ACI may immediately suspend Member's rights to use ACI facilities until the default is remedied. In addition, upon the occurrence of any "event of default" ACI may, upon 30 days' written notice to Member, a) declare the entire unpaid balance of the Membership Fee, together with the finance charge and Maintenance Fees accrued to the date of the default, immediately due and payable, with interest on the unpaid principal balance accruing from the date ACI declares the balance due at the maximum contract rate allowed by law, until fully paid; or b) terminate its obligations under this Membership Agreement and the membership. If ACI terminates its obligations under this Membership Agreement and the membership because of Member's default, which ACI may but is not required to do, ACI shall have all remedies provided by law, and ACI shall keep all monies Member has paid ACI up to the time of default as liquidated damages and not as a penalty. Member agrees that this action as to liquidated damages is a reasonable endeavor to estimate

3

>     compensation to ACI for the losses which might result from Member's default. Member may not terminate its obligations under this Membership Agreement or the membership if Member defaults. *Member agrees to pay ACI for ACI's collection costs and expenses incurred due to any default to Member*.

Membership Agreement at ¶¶ 15-16 (emphasis added). It is undisputed that plaintiffs failed to make the monthly payments as required under the membership agreement. *See* Loan Payment History attached to defendant's brief as Exh. B. This suit arises from defendant's collection letter sent to plaintiffs for the unpaid amounts owed to ACI. *See* Exh. 1 attached to Amended Compl.

The collection letter was sent pursuant to an "Agreement and Assignment of Accounts" dated September 24, 2003, in which "American Campgrounds" agreed to assign certain accounts to defendant. *See* Agreement and assignment of accounts (the "collection agreement") attached to defendant's brief as Exh. C. The collection agreement provides that certain accounts will be assigned to defendant for collection:

>     2.4   AUTHORITY TO COLLECT. Upon assignment of any claim and / account, not withstanding anything contained herein, AGENCY [defendant] shall review with CLIENT [ACI] any requests to compromise a claim and the decision to accept any such compromise shall be made by CLIENT, in its sole and absolute judgement. AGENCY shall have full authority to perform all acts deemed legal and necessary to collect said claim and / or accounts.
>
>     2.5   DILIGENT COLLECTION BY AGENCY: Upon assignment of any claim and / or account, AGENCY shall comply with all applicable laws and regulations in performing its duties hereunder and shall obtain all applicable licenses or approvals necessary or required in order to perform its duties hereunder. AGENCY shall promptly undertake to, through any act which is proper and lawful, collect any amounts due and owing on account of the assigned claims and / or accounts.
>
>     2.6   EXCLUSIVE RIGHT: By assignment of any claim and / or account, CLIENT grants to AGENCY the exclusive right to collect said claim and / or account.

Collection agreement at §§ 2.4-2.6.

The collection agreement also provides that defendant will be compensated on a commission basis and reimbursed for attorneys fees and court costs necessary for filing a legal action:

> 2.8 LEGAL ACTION: AGENCY shall not file any legal action on any assigned claim and / or account without first obtaining written consent from CLIENT. AGENCY will advance any and all attorney fees and / or court costs necessary to file legal action. AGENCY'S advanced attorneys fees and or [sic] court costs will be added to the assigned claim and / or account and any monies collected will first be applied to AGENCY'S advanced fees. The commission structure will remain as mentioned below.
>
> 2.9 COMMISSION: AGENCY shall receive a commission on all monies or its equivalent paid on account of the assigned claims and/or accounts which are paid to AGENCY, AGENCY'S agents or CLIENT in accordance with the following commission schedule: 28% of the total amount collected by AGENCY. 30 % is for all placements whether they are 1st or 2nd placements. AGENCY agrees to add collection fees to the assigned balance of each account if allowed by law.
>
> 2.10 DIRECT PAYMENTS: On any payments made directly to CLIENT on account of the assigned claims and / or accounts, AGENCY is authorized to deduct its commission thereon from any monies due CLIENT from the collections received by AGENCY.
>
> \*      \*      \*
>
> 2.13 STATEMENT OF ACCOUNT AND REMITTANCE OF MONIES DUE: On or before the 15th day of every month, AGENCY shall provide a written statement of accounts setting forth all credits and deductions made up to and including the last day of the processing month / cycle, except that the statement need not account for; (a) court costs that were previously advanced by AGENCY; and (b) attorneys fees and interest or other charges incidental to the principal of the claim properly and legally belonging to AGENCY. At the same time, AGENCY shall remit all monies due to CLIENT on account of the assigned claims and / or accounts.

Collection agreement at §§ 2.8-2.10, 2.13.

Plaintiffs do not dispute that their ACI account was assigned to defendant for collection under the collection agreement. Defendant's collection letter, dated December 14, 2005, appeared on the letterhead of "Oak Tree Group, Inc." located in Tehachapi, California. *Id.* The letter prominently displayed the words "**COLLECTION NOTICE**" and the phrase "**THIS HAS BEEN SENT TO YOU BY A COLLECTION AGENCY**." *Id.* The letter identified a "Balance Due" of $6,506.58 on account no. 28236, stating in pertinent part that:

> This letter is an opportunity to resolve your delinquency with **AMERICAN CAMPGROUNDS, INC.**
>
> If you do not respond with full payment or by notifying us at the address above, we intend to <u>Implement Full Collection Procedures</u>. Protect your credit standing and avoid further collection action by responding to this collection notice. To make payment, send your check for the full amount made payable to Oak Tree Group, Inc.

*Id.*

On or about December 28, 2005, plaintiffs sent defendant a "letter of dispute" in response to the collection notice, observing that the balance due in the notice is "considerably higher" than the purchase price in the original agreement with ACI and requesting "an itemized list of how you established the balance due of $ 6,506.58." *See* plaintiffs' letter attached to defendant's brief as Exh. E. Plaintiffs claimed that ACI misrepresented the nature of the membership (i.e., that they could not utilize it in Alabama), that they contacted an ACI customer service representative in Arizona, that they sent ACI a certified letter on May 31, 2005 per the customer service representative's instructions requesting termination of the membership, and that they received no response from ACI. *Id.* Plaintiffs also requested that defendant release them from the agreement. *Id.*

In a letter dated January 5, 2005 [sic], an unidentified representative from Oak Tree Group, Inc., provided the following response:

> Your letter dated 12-28-05 has been received in our office and we would like to resolve this matter in an amicable fashion. According to your contract, you are allowed to use resorts affiliated with Coast-to-Coast, Adventure Outdoor Resorts and Resort Parks International. There are several campgrounds in every state that can be used with this membership, provided they are affiliated with the resort. American Campgrounds, Inc. is among one of thousands of

> resorts throughout the U.S. that sell memberships the same way, there are many happy campers to say the least [sic].
>
> The person you contacted in Arizona named Larry is a person that works out of the billing department for American Campgrounds, Inc. and has no authority whatsoever. This matter needs to be resolved through this office.
>
> The balance of $6,506.58 placed for collection can be broken down as follows: $ 4,842.78 in principle [sic], $307.82 interest and $ 1,355.98 in collection fees.
>
> The contract you signed is going on 10 months in arrears and you are jeopardizing your good credit rating. Please call me directly and I may be able to work out a reinstatement agreement or a release from the entire contract.
>
> Please contact my office at (800) 742-5501, extension 224.

*See* defendant's letter attached to defendant's brief as Exh. G (emphasis in original). Then, in a statement dated March 27, 2006, "American Campgrounds" advised plaintiffs that their account had an amount due of $1,120.58, and advised them to make a check payable to "American Campgrounds - MI." *See* statement attached to defendant's brief as Exh F.

Opinion (Feb. 12, 2008), slip op. at 2-7 (footnotes omitted).

### C.  Additional findings

The court makes the following additional findings of fact based upon documents submitted by the parties with their briefs:

1. Defendant did not inform plaintiffs, before or contemporaneous with the mailing of the December 14, 2005 notice, that the amount claimed as the "Balance Due" included an amount for collection fees. *See* Defendant's Response to plaintiffs' first requests [sic] for admissions (docket no. 89-3).

2. When allowed by law, defendant routinely adds a collection fee to the amounts it attempts to collect on behalf of American Campgrounds, Inc. *Id.*

7

3. Since May 31, 2005, defendant has sent more than 100 collection letters to Michigan residents, which letters included an amount for collection fees as part of the balance claimed to be due on the debt. *Id.*

### D. Terry Braband Affidavit

Defendant has submitted an affidavit from its Operations Director, Terry Braband. *See* docket no. 90-2. This affidavit is not properly before the court, because it was not identified in the Final Pretrial Order. *See* docket nos. 85, 87. Accordingly, the court will not consider this affidavit in deciding the statutory damage issue.

## II. CONCLUSIONS OF LAW [2]

### A. The damage provision of the FDCPA

The FDCPA allows a prevailing plaintiff to obtain the following damages from a defendant debt collector pursuant to 15 U.S.C. § 1692k, which provides in pertinent part as follows:

(a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

---

[2] The court recognizes that some of its conclusions of law may contain findings of fact. To that extent, this portion of the court's opinion should be deemed to include both findings of fact and conclusions of law.

>   (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.
>
>   (b) Factors considered by court
>
>   In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors--
>
>   (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or
>
>   (2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.
>
>   (c) Intent
>
>   A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k.

>   **B.     Availability of statutory damages**

To be eligible for statutory damages under § 1692k, plaintiffs must establish that defendant violated the FDCPA. *Lester E. Cox Medical Center, Springfield, Mo. v. Huntsman*, 408 F.3d 989, 993 (8th Cir. 2005). Plaintiffs have met this requirement. Defendant, however, contends that plaintiffs are not entitled to statutory damages because these additional damages "assume[] that plaintiffs must first prove actual damages." Defendant's Brief at 3. In support of its position, defendant cites *Greene v. Rash, Curtis and Associates*, 89 F.R.D. 314, 316 (E.D. Tenn. 1980) for the proposition that "actual damages must be awarded before the Court is authorized to award these

9

additional damages." *Id.* at 3-4.  As an initial matter, the passage quoted in defendant's brief is taken out of context. The *Greene* court did not reach this conclusion, but rather addressed the issue of whether a plaintiff could obtain damages for mental anguish under § 1692k. The entire paragraph reads as follows:

> It is true that the Court has been authorized to award a plaintiff " * * * additional damages * * * " not exceeding the sum of $1,000. 15 U.S.C. s 1692k(a)(2)(A). This provision could be construed as providing for some compensation in lieu of an award of actual damages for mental anguish. But, it could also be interpreted as permitting an award of a limited amount of punitive damages; for, the language seems to imply that actual damages must have been awarded before the Court is authorized to award these additional damages. Such an interpretation would seem to be in accord with the statement in the legislative history of the act that, in assessing damages, " * * * the court must take into account the nature of the violation, the degree of willfullness, and the debt collector's persistence. * * * " 2 U.S.Code Cong. & Admin.News, supra, at 1700.

*Greene*, 89 F.R.D. at 316.

Contrary to defendant's assertion, "[t]he FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir.1998). *See, e.g.*, *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) ("Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006) (citing *Miller, infra*);  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2nd Cir. 2003)  ("The FDCPA provides for liability for attempting to collect an unlawful debt, however, and permits the recovery of statutory damages up to $1,000 in the absence of actual damages"); *Baker v. G. C. Services Corp.*,  677 F.2d 775, 780 (9th Cir.  1982) ("The statute clearly specifies the total damage award as the sum of the separate amounts of actual damages, statutory

damages and attorney fees. There is no indication in the statute that award of statutory damages must be based on proof of actual damages"). *See generally, Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1994) ("[t]he words of 15 U.S.C. § 1692k(a)(2)(A) simply state that damages, above and beyond all actual damages, may not exceed $1,000 'in the case of any action by an individual'"). Accordingly, the court rejects defendant's contention that plaintiffs must suffer actual damages to obtain an award of additional statutory damages under § 16792k(b).

### C.     Assessment of statutory damages

"In assessing statutory damages, a district court considers: (1) the frequency and persistence of non-compliance; (2) the nature of such non-compliance; [and,] (3) the extent to which the non-compliance was intentional." *Huntsman*, 408 F.3d at 993. "Where multiple violations occur, Congress intended the courts to award close to the full $1,000. Conversely, in less egregious situations, the court can award less." *Wright,* 22 F.3d at 651. Some district courts have refused to award statutory damages for *de minimis* or technical violations. *Huntsman*, 408 F.3d at 993.

Plaintiffs contend that they are entitled to the maximum statutory damages for the following reasons. First, defendant admits to using this practice at least hundreds of times. Second, the violations are not merely technical. "By falsely inflating the [amount] of debts, defendant obviously intended to significantly increase the amount it collects from consumers and conceal the nature of the charges." Plaintiffs' Brief at 4. Third, defendants intended to violate the FDCPA.

Defendant counters by stating that the "frequency and persistence" element relates only to letters sent to plaintiff and that the court should not consider letters sent to non-parties. In addition, defendant points out that its noncompliance was comparatively minor, that plaintiffs "were

11

not duped," and that the violation was based upon a technicality. Finally, defendant contends that the noncompliance was not intentionally designed to deceive plaintiffs.

### 1. Frequency and persistence of non-compliance

Although this action arises from only a single letter sent to plaintiffs, the evidence establishes that defendant sent similar letters on at least 100 occasions. There is conflicting case law on whether the court can consider a debt collector's actions with respect to non-parties when evaluating statutory damages under the FDCPA. The Sixth Circuit has not explicitly addressed this issue. Plaintiffs rely on the court's decision in *Riveria v. MAB Collection, Inc.*, 682 F. Supp. 174 (W.D. N.Y. 1988), for the proposition that they can establish the frequency and persistence of the practice by examining letters sent by defendant to non-parties. In *Riveria*, the court awarded the maximum amount of statutory damages after finding that "[t]he validation clause in question appears on every debt collection letter sent out by MAB, as these are computer generated forms." *Riveria*, 682 F. Supp. at 179.

On the other hand, a number of courts take the position that the debt collector's actions with respect to non-parties should not be a consideration in determining the statutory damages. See, e.g., *Anderson v. Frederick J. Hanna & Associates*, 361 F.Supp.2d 1379, 1384 (N.D. Ga. 2005) (declining to consider FDCPA violations unrelated to the present case); *Cusumano v. NRB, Inc.*, 1998 WL 673833 at *2 (N.D.Ill. Sept. 23, 1998) ("There is nothing in the clear language of the FDCPA which suggests that - in an individual action, as opposed to a class action - a court looks to a debt collector's practices regarding persons other than the plaintiff in determining the 'frequency and persistence of noncompliance'"); *Powell v. Computer Credit, Inc.*, 975 F.Supp. 1034, 1039 (S.D. Ohio 1997), *affirmed* 1998 WL 773989 (6th Cir. Oct. 15, 1998) ("By stating that

a court in considering statutory damages in an individual FDCPA suit should consider 'the frequency and persistence of noncompliance by the debt collector,' Congress meant that the Court should consider the debt collector's noncompliance as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance"); *Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172 (W.D.Wis. 1996) (same).

After reviewing these authorities, the court finds the reasoning in *Dewey*, 927 F.Supp. 1172 persuasive:

> In setting forth the factors that courts should consider in awarding statutory damages for violations of the act, § 1692k(b) makes a distinction between individual actions and class actions. Courts are to consider the "frequency and persistence of noncompliance by the debt collector" in each type of action. In class actions, courts are to consider "the number of persons adversely affected" as well. § 1692k(b)(2).
>
> If the term "the number of persons adversely affected" is to have meaning, it must be something additional to the "frequency and persistence of noncompliance." Otherwise, the term would be superfluous and contradict the familiar statutory canon that an interpretation should give meaning to all components of a statute. Applying this canon, I find that "frequency and persistence of noncompliance" does not pertain to actions taken by a debt collector in other cases but only to the consistency of the debt collector's actions with respect to the debtor bringing suit. If Congress had intended courts to address the issue of a debt collector's comprehensive business activities in individual actions, it would have included "the number of persons adversely affected" or other similar language as a relevant factor in subpart (1) of § 1692k(b). It appears that Congress recognized the inefficiency of delving into such matters in cases where statutory damages are limited to $1000.

*Dewey*, 927 F.Supp. at 1175.

Accordingly, the court concludes that the "frequency and persistence of noncompliance" consideration in assessing statutory damages under § 1692k does not include a debt collector's actions with respect to non-parties.

13

### 2. Nature of the non-compliance

Second, the non-compliance was relatively minor. This case arises from a single letter dated December 14, 2005, in which defendant failed to break down the "balance due" into its components of principal, interest and collection fees.

### 3. Extent to which the non-compliance was intentional

Third, there is no evidence that defendant's December 14th letter was an intentional violation of the FDCPA. Admittedly, as the court observed its previous opinion, this letter was confusing:

> [D]efendant's December 14, 2005 letter states that plaintiffs owed AGI a "balance due" $6,506.58. Plaintiffs' surprise at this balance due is understandable. The total amount of the Membership Fee and Dues was $5,040.00. Plaintiffs made a downpayment of $440.00, leaving a balance due of $4,600.00, an amount nearly $2,000.00 less than defendant's statement of the balance due in the collection letter. Defendant provided no explanation for this dramatic increase in plaintiffs' balance. Defendant's failure to account for this additional amount would mislead an unsophisticated consumer. Even a sophisticated consumer would find it difficult to verify or dispute this debt, which included both interest and collection costs. Accordingly, the court concludes that the December 14, 2005 collection notice violated § 1692e(2).

Opinion (Feb. 12, 2008) at pp. 10-11. Nevertheless, the court finds no evidence that defendant intended to violate the FDCPA in this case. The record reflects that plaintiffs defaulted on their agreement with ACI, making none of the agreed-upon monthly payments over a period of nearly a year. The collection agreement authorized ACI to obtain collection costs in the event of a default, and as plaintiffs knew, from their membership agreement, that they had agreed to pay collection costs. When plaintiffs requested an itemized breakdown of the balance due (which should have been in the initial letter), defendant provided it within days after the request.

14

**4.     Summary**

Given the fact that defendant sent only one collection letter, that the FDCPA non-compliance was relatively minor, and the lack of evidence that defendant intended to violate the FDCPA, the court finds that minimal statutory damages are justified in this case. Put in perspective, this case essentially concerns one poorly written letter promptly corrected.

**III.     CONCLUSION**

Accordingly, judgment will be entered in favor of plaintiffs in the amount of $50.00. A judgment consistent with these findings of fact and conclusions of law shall be issued forthwith.


Dated:  November 21, 2008                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge